This session of the Ninth Circuit Court of Appeals shall now resume. Please be seated. Thank you. The next case on our docket is the case of Robert Reisch v. Phoenix Heliparts. So if the council is ready to proceed, we're ready to hear your arguments. Ready to go, Your Honor. Thank you. This is Lee Horner representing Appellant Reisch, and I would like to reserve three minutes, if I may, for a possible rebuttal. I'm going to present my argument in two separate elements. The easiest to figure out is the Rule 60B-5 issue, which was the district court's refusal to vacate the bankruptcy court's order of turnover due to a change of circumstances. The change of circumstances was the buyer, the Azerbaijan Ministry of Defense, or AMOD, sued Mr. Reisch for a refund because the helicopter that they bought from him was non-conforming goods, wasn't airworthy. Now, Mr. Reisch had bought it from the debtor, but the transaction with AMOD was done without the knowledge the debtor had filed a Chapter 11 bankruptcy. So, of course, it was sold without court approval. Nobody told us about the bankruptcy at the time, and there we are. So, the question is, was it a state property? Well, we'll get into that in the Uniform Commercial Code argument in the second part, but the point is, if the 60B-5 relief denial is affirmed, Mr. Reisch will be paying three times. First, what he paid to the debtor originally, which was about $1,395,000 cash. Then, he'd have to pay the AMOD a refund of their purchase price, which is $2.1 million, what the judgment is. It's a little more than that now. And then, the trustee wants, that's the sales proceeds, because they say, well, he sold a state property. Now, as we stated- Your proof tells us that he has settled with AMOD. Is that correct? That is correct. Do we know what the terms of that are? I can give it to you if you believe it's relevant, Your Honor. Is it true what you just told us, that he's got to pay $2.1 million plus interest? If he loses this appeal, he does not. We've made a deal with them to pay them $1,250,000 right now, and assign all of his claims against the estate to the AMOD as full satisfaction if he loses. Now, if he wins, he gets all of the registry money, which is- Well, let me stop right there. I'm less interested in the second part, because it turns out the first part tells us that what you have presented as the basis for why he should prevail on the Rule 60 argument turns out not to be currently the case, that in fact, he doesn't have to pay them anything. Is that true? It is not true if he loses the case. I'm sorry. If he loses the case, he does not pay anymore. Okay, so what's the deal that should cause us to decide that the district court should have granted the motion? Well, because he should not have to pay the buyer and pay the trustee on the deal that's under the 60B-5, because out of that registry fund, Your Honor, he would pay the balance of the judgment due to AMOD, which is about $1,250,000. The deal- How did he get the money from AMOD? He got the money from AMOD. That's correct. Okay, so the judgment that says he has to pay the trustee is that he took money from AMOD for property that belonged to the estate, so it's the estate that deserves to get that money. That seems pretty straightforward. I'm not sure I understand why that's unfair to him. Well, it's unfair because he would be refunding the purchase price for non-conforming goods to a buyer who's complained about it, and that burden would be upon the trustee if he- I would stop. He's not, but you just told me he's got a deal where he's not retunding the money to AMOD unless he prevails in this appeal, so it's not like he's caught between a rock and a hard place. The rock seems to have gone away. Okay. What's happened, Your Honor, he's already paid them to settle this case, $1,250,000, but that was predicated on whether- excuse me just a second- on whether or not he wins this appeal because AMOD wants all the estate to give them all their money back. That's what our argument is here with the 60B-5. Let me go to another aspect of the Rule 60 motion. At what point in time did your client understand he might be caught between two conflicting demands? This would be after the bankruptcy court determined upon our adversary complaint that the Well, he couldn't have had- or he shouldn't have had confidence he was going to prevail in his arguments before the bankruptcy court. I'm posing a different question. Not that he knew that he was going to lose. When did he know he was facing pressure from two different sides? And in particular, I'll go ahead and jump to what I'm leading to, which is it's been pointed out that your client had opportunities to try to put all of this in front of the bankruptcy court, or the district court, and declined to do so. Instead, tried to play a game whereby he might actually emerge with more cash than otherwise he would get. What's wrong with the argument that's been offered up on behalf of the trustee that your client made a judgment to hold back and not try to present the whole thing to the court? Well, first, the dispute with AMOD is whether they had accepted that helicopter as is, whereas, because there's in the record, a certificate that they did so. And if they did, then they're not entitled to a refund. Now, if that's the case- Yeah, but you're obviously not confident that view is going to prevail because it didn't prevail. And indeed, we've also been told that your client didn't even oppose their motion for summary judgment. So it seems to me increasingly that there's not a good explanation for why your client didn't take action to present all of this to the court at a much earlier point in time. Is there a good reason why he didn't present all of this to the court at a much earlier point in time? I'm not quite sure I understand what you mean by all of this. The court- Well, that it was facing the possibility of demands in both directions. Oh, that was brought to the bankruptcy court's attention, but it was also uncertain until the latest appeal, which is now on appeal. We didn't know how that was going to turn out. Here's the thing. If he had won against AMOD and not have to give them their money back, then the question would drop back to the UCC argument, was this estate property or not? If there's no refund due, then the estate would get the money in the registry. And that's the end of the story. So- Well, if he had won, he would have had a happier ending, but he didn't win. And now he's in this predicament and you're asking that he be extracted from the predicament. And the question that I'm trying to pose is why didn't he put all of this to the court in the form of an interpleader or something else, rather than try to hold back, hoping he would come out with something more than it turns out he's come out with? Well, as I say, the AMOD issue was not something the bankruptcy court could have construed because that was a dispute between Mr. Reich and AMOD that bought the helicopter. The dispute with the estate, of course, was that estate property. We argued- You're arguing this has changed circumstances, but it was circumstances of which everyone was aware of. It's just that your client had a particular strategy for trying to address this situation and now it's led to this. Well, he's convinced AMOD to take a haircut, if you will, on the deal, predicated on if he were to lose this case, get none of the registry money back, which that's his money that he's put in the registry. That was done as a supersedence bond. So that's the situation there. He would get, after paying AMOD off, it would be about 969,000 change, if you will, out of the registry. Why didn't he, in the AMOD litigation, why didn't he respond in that litigation for so long? Well, what happened is our internet system was down for a period of time and we received electronic notice of the summary judgment motion, or it was sent to us electronically, but we never got it. And immediately when I found out, I asked the other side if they would agree to set it aside. No, they wouldn't. I asked the district court if it would set it aside. They said no. The magistrate judge did and we took that up on appeal and the Ninth Circuit said no, we're not going to let you set that aside. So that's what it amounts to. If it hadn't been set aside, it would have amounted to a court trial in district court while this was pending with the trustee. There is an equitable component to Rule 60. And so the question comes from that perspective as to why your client wouldn't be someone deserving of that. Well, so he doesn't have to pay three times, Your Honor, for this helicopter. That's what the equitable part is. Now, as far as the, did you have any other questions on 60 being thought? Because I'd like to discuss UCC. Okay. The issue now is whether this was goods or services we trustees are arguing that this is a service contract, if you will. And we all agree that UCC does not apply, Uniform Commercial Code, does not apply to service contracts. The contract, however, in a record that serves 782 says it is a helicopter purchase agreement. It spells out exactly what's going to happen when there's a bill of sale will be delivered down the road. And yes, there's going to be some services. There absolutely is. There's going to be a lot of servicing. I mean, let's look at the economic reality of the transaction. Your client paid a lot of money up front, well before he was going to get his hands on an operating aircraft, and continued to pay in a lot of money. And ultimately wound up loaning in some fashion through an affiliate more money, well before there was an operating aircraft. I look at that, it's hard for me to see how a finding that this was really payment for fixing the aircraft as opposed to payment for what it was at the beginning. How's that finding clearly erroneous? Well, it's just like if you go to the GM dealer and buy a custom made truck that has to be built from scratch, it's the same thing, it's going to be extremely labor intensive, they're gonna have to pay the foundry and the glass company and electric and all that and spend a great deal amount of union labor to put the thing together. But it's still a sale of goods. At the end of the day, you've got a uniform commercial code contract that says so. Now the other thing is in the Ninth Circuit, as you're aware, we look at what is the primary or the where it's part goods, part service. And the Bartek case, which we've cited involved the fabrication and pickling, if you will, and painting of steel, delivery of the steel. And I believe the vendor also had to visit the site and verify that it was built the way it was supposed to be built. The Ninth Circuit held and Bartek that was a UCC transaction was for the sale of at the time of Rice's contract with the helicopter, with the heliparts, that the helicopter was not airworthy. And at all, I mean, it was required major repairs. I mean, it's just hard to ignore the testimony of helipart CAO, that 70% of the contract price involved labor and 30% involved parts. I'm just trying to figure out why that is in a contract for services. Excellent question. Well, because it was not his helicopter, he paid... I'm sorry, I didn't hear that last because it was? I'm sorry. It was not his helicopter. He did not deposit that thing saying he bought it from somebody else. Say here, fix it up. I'll give you a million three. He said, I will buy an airworthy helicopter from you people for a million three, whatever it was, and get to work. Well, they didn't do anything. They took his money and spent it elsewhere. And, you know, the issue of when the title passed in the UCC says if a document of title is to be delivered after the contract is formed, like with delivery, then title does not pass until then. But a document of title is a document of title in this, but the bankruptcy court held that. And when there is no document of title involved, a title transfers upon formation of the contract. Your client is a creditor in the bankruptcy? He is. Is he the biggest? Is he the largest creditor? He may well be. I don't know about DKC. Maybe Mr. Cross can address that. But he is a substantial creditor and was not scheduled. Do you have any sense setting aside this case what he stands to recover in the bankruptcy? I missed it. Do you have any sense setting aside this case what your client may stand to recover in the bankruptcy? Yes, he would get the change from the registry, Your Honor. First, he has to pay AMOD, the balance which is $1,204,000. There's about $2.1 million in the registry. After paying AMOD, he would get about $969,000. He's paid, though, these people $5 million. It's not like he's getting off scot-free. And the other thing to keep in mind is the FAA registry does not determine ownership. We've reached that. It is simply a registry showing the citizenship of aircraft. Non-citizens cannot register aircraft with the FAA. If it's wrecked, it gets deregistered. Non-nearworthy aircraft cannot be registered. And that means it has to drop back to the local law. And that's what the statute says, which determines who owns it. And then the FAA will issue a certified order for who owns it. But that's how that goes. Also, I wanted to point out, Mr. Reichen never filed anything with the FAA, but then neither did the trustee. So the FAA's registry still shows the original owner, Utility Aviation of Denver, which owned it when it was wrecked as the last holder. And it has been deregistered, unlike cars that you can buy a salvage car and get title on it. You can't with aircraft. You can't get an FAA record. Let me just ask you a question because we're running out of time here. Assuming we decide, I don't know where people are on this on the panel, but that the purchase agreement is predominantly a contract for services. Should we analyze the transfer of the helicopter under Section 549 of the code? And why wouldn't the transfer be avoidable if we did? Well, that's an excellent question. The code says that the trustee estate gets back either the goods that were sold in a case like this or the value. But the value, of course, is what burdens that sale. What burdens the sale is it was sold as nonconforming goods to a BFP. The BFP revoked its acceptance, got a judgment for a refund, and wants its money back. And my point is, if the estate had sold that same helicopter, which they claim is their property, to the same buyer, the same buyer is going to say the same thing. We want a refund, so the estate would have to pay it. By getting the money out of Mr. Rice, the estate is trying to immunize itself from that obligation. And that's where the 16b-5 comes in. All right. Thank you very much, Mr. Cross. Good morning, your honors. I'm Jim Cross. I represent Louie Mukai, who is the liquidating trustee of the Phoenix Hella Parts Liquidation Trust. I'm going to start by addressing the 549 and the UCC issues that Mr. Horner was just discussing. Under the bankruptcy code, under section 549, the trustee is entitled to recover under section 549, if he meets three elements, four elements, that there was a transfer, admitted here, of property of the estate, that's at issue, after the petition date, acknowledged, that was not authorized by the bankruptcy code or an order of the court, also acknowledged. Throughout this case, the parties have agreed that all the elements are met, except the second one, whether the helicopter 4-1FF was property of the estate when it was transferred to Rice and then to Amon. On that element, the parties agree that if UCC does not apply, then 4-1FF was, in fact, bankruptcy estate property. And as to whether the UCC applies, lower courts provided three independent bases that it does not apply and that this court may affirm on any one of those. And they are FAA preemption, number one, this was a service contract, number two, and this helicopter was purchased for a commercial purpose. That's not even briefed in this brief. That's not an issue on appeal. You may find independently that based upon that finding, you can affirm. So let's talk about the FAA preemption issues. As you heard, there is this dispute over the fact that the interest in this helicopter were not recorded. That is not correct because this helicopter was titled in the name of the debtor. And as we know from the exhibits to the motion for summary judgment, that chain of title went from the debtor to Mr. Rice to Amon. So all of this discussion in the brief that you can't register with the FAA and a non-airworthy aircraft is simply not correct. And as a matter of fact, you can go to the FAA website right now and put in this serial number and you will get this helicopter and it will tell you that it was exported to Azerbaijan. I also think it's relevant to discuss this claim. But when was it when was it registered? I pulled this off on November 11th and it says it was deregistered in 2016. It was exported to Azerbaijan 2-25-16. So airworthiness is not a prerequisite. And that's why there was this chain of title that allowed us to determine who got the helicopter, where did it end up? And I also take issue... Just to make sure what you're saying, you're saying it was registered in a non-airworthy condition? Yes, that's correct. And now it's been deregistered. It's been deregistered. That's correct. Because according to the FAA, it believes this helicopter was sent to Azerbaijan. That's the public record. Do you know of any aircraft that has been registered with the FAA despite not being airworthy? This one. How about another one? Yeah. I'm not an aviation expert, Your Honor. I don't know. For purposes of establishing title, is there a difference between an FAA bill of sale and some other way of registering an aircraft? I'm not aware, but it's my understanding that it's much like when you go to a county recorder. We want to have a place where if you have got an interest in an aircraft, we can go and see  So what I'm trying to say is under the UCC, these arguments he's making, they're preempted by the Federal Aviation Act. And that's what Judge Collins found. That's what Judge Reyes also determined. Does any of them address this issue of the airworthiness? I don't believe so because I don't believe it was raised below. If I may continue. So, I'm sorry, go ahead. No, go ahead. I apologize. So we also have unrefuted testimony, as you all noticed, that this was a contract whose predominant purpose was for services. There's testimony in the record by both Mr. McKay and Ms. Cannon, the former president of the company. There is nothing in the record to refute that. As a matter of fact, Mr. Reyes even testified at trial that there were substantial services needed to be performed on this. So based upon that, we have crucial unrefuted evidence in the record that would allow you to affirm on this basis. And finally, the commercial purpose. It was clear that this contract was for a commercial purpose. The court made that finding. It's unrefuted and it's not disputed in this appeal. So do you have an opinion if this case should be analyzed under 549 or 544? Actually both because 549 gives you the right to recover the property and the avoidance powers that arise under 544 are basically the building block on that. I'm sorry, I didn't catch the last part of what you said. 544 is basically the building block that gets you to 549. Now I will address the Rule 60B issue and I will tell you that when I just learned within the last 48 hours about the Amon Settlement, I read in the brief. You just learned about what? I'm sorry, can you say that again? I said I just learned in the last 48 hours about the terms of the Amon Settlement. Okay, thank you. I realized that it was mentioned in the reply brief, but it took me some time to get that. But Amon's counsel supplied it to me and what Mr. Horner is saying is true. He cut a deal, so this argument that he's going to have to pay three times, that's not correct. And more importantly, for you to consider Rule 60B-5 relief, you should look at the cases that were actually cited in the reply brief. And it was the case, I'm trying to find it here, just a sec. It's the Stoker's v. Morrison case. Such relief is granted only when new and unforeseen conditions cause extreme and unexpected hardship so that the decree is oppressive. In this case, as you correctly pointed out, Mr. Reich chose his medicine. He chose to sue in bankruptcy court to say this money is mine. He then, when sued in district court, same time this litigation was going on, he chose to defend that. That's the result of his actions. Could he have done it differently? Of course, he could have taken the $1 million, $2 million, $5 million, put it into the court's registry, filed a declaratory judgment action saying, I don't know who this belongs to, but I'm not going to pay twice. Instead, he didn't do that. Instead, what he did is why we are here today. I don't believe, again, I believe the case authority is pretty certain on this. You don't get 60 v. 5 relief for a money judgment. That was the Stoker's case. He's coming here today basically saying, you know, I tried, I lost, please fix this. I don't believe that's the role of this court. I have nothing further unless you have some further questions for me. Let me just, since you have some time, let me just play Temple's advocate for you here. And let's just say the court analyzes the transfer of the helicopter under section 549 and finds that it's a sale, that the purchase agreement is predominantly a contract for goods. Does Mr. Rice have any interest in the helicopter that this court should consider? No. Even if it's a goods, if we determine it's a sale of goods. Because it was for commercial purpose. He doesn't have the right to claim an interest in it unless it's a consumer use. And as Judge Collins specifically found at the end of the trial, he stated to Mr. Horner, Mr. Horner, I heard no testimony today about a consumer use for this helicopter. And that was in his findings. I have nothing further. Let me see. Any other questions? Okay. Thank you. I'll give you a minute to wrap up your rebuttal. You went way over time the last time. I did. And I apologize for that. The Morrison case, we brought up in the reply because the trustee didn't catch it. It says normally money judgments are not subject to Rule 60 relief, but that was title money judgments, which Morrison was not. The district court remanded that. See how much the set off should be affected. Has there been partial payments on the debt? So that's the case. Commercial purpose has absolutely nothing to do with whether a buyer of goods gets a special property interest. That has to do with when there's a right of replevant apply. And that with commercial, there has to be a renunciation of the deal, which there was clearly that here. FAA registration final point is not in this record. It never was registered as aircraft to anybody other than utility aviation, the outfit that wrecked it in Denver. There are bills of sale. Yes. Utility sold it to Rotormate in Texas. We sold it to the debtor. We sold it to Mr. Reich. We sold it to AMOD. Bills of sale are in the record. Not a single one has been recorded with the FAA. I believe my time has expired unless there's other questions. Thank you very much, Mr. Horner. Mr. Cross for your oral argument presentations today. The case of Robert Rice versus Phoenix Heliparts is now submitted. Thank you very much. Thank you.
judges: CLIFTON, MURGUIA, BRESS